| | |
|---|---|
| Case No. CV 19-1722-MWF (PLAx) | Date: May 17, 2019 |
| Title: Lizet Luevano v. Ford Motor Company | |

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| | |
|---|---|
| Deputy Clerk:<br>Rita Sanchez | Court Reporter:<br>Not Reported |
| Attorneys Present for Plaintiff:<br>None Present | Attorneys Present for Defendant:<br>None Present |

**Proceedings (In Chambers):** ORDER RE: MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE [6]; MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) [7]; MOTION FOR REMAND TO SUPERIOR COURT OF CALIFORNIA [9]

Before the Court are three motions:

First, there is Defendant Ford Motor Company's ("Ford") Motion to Strike Pursuant to California Anti-SLAPP Statute (the "Anti-SLAPP Motion"), filed on March 27, 2019. (Docket No. 6). Plaintiff Lizet Luevano filed an Opposition on April 22, 2019. (Docket No. 16). Ford filed a Reply on April 29, 2019. (Docket No. 17).

Second, there is Ford's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Rule 12(b)(6) (the "Dismissal Motion"), filed on March 27, 2019. (Docket No. 7). Plaintiff filed an Opposition on April 22, 2019, to which Ford replied on April 29, 2019. (Docket Nos. 15, 18).

Third, there is Plaintiff's Motion for Remand to Superior Court of California (the "Remand Motion"), filed on March 29, 2019. (Docket No. 9). Ford filed an Opposition on April 8, 2019. (Docket No. 11). Plaintiff filed her Reply on April 15, 2019. (Docket No. 13).

The Court has read and considered the papers filed on the three motions and held a hearing on May 13, 2019.

For the reasons discussed below, the three motions are ruled upon as follows:

- The Remand Motion is **GRANTED**.  Ford was put on notice of removability by November 26, 2018, with the filing of the First Amended Complaint, by or January 7, 2019, with the filing of the Second.  Because Ford did not file a Notice of Removal until March 8, 2019, its attempt at removal is untimely; and

- The Anti-SLAPP Motion and Dismissal Motion are **DENIED** *as moot*.

I.   **BACKGROUND**

On August 21, 2018, Plaintiff commenced this action in the Los Angeles County Superior Court.  (Notice of Removal ("NoR"), ¶ 2 (Docket No. 1); Declaration of Mitch Rosensweig Dated March 29, 2019 ("Rosensweig Decl.") ¶ 4, Ex. B ("Complaint") (Docket No. 9-3)).

The Complaint contained the following allegations:

Plaintiff was (and still is) an individual residing in La Puenta, California.  (Compl. ¶ 2).  Ford was (and still is) a Delaware corporation with its principal place of business in Michigan.  (*Id.* ¶ 2; NoR ¶ 13).

On August 28, 2015, Plaintiff "purchased a new 2015 Ford Mustang, VIN: 1FA6P8CF1F5413616."  (Compl. ¶ 8).  Express warranties "accompanied the sale of the vehicle to Plaintiff by which Ford undertook to preserve or maintain the utility or performance of the vehicle or to provide compensation if there was a failure in such utility or performance.  (*Id.*).  The vehicle "was delivered to Plaintiff with serious defects and nonconformities to warranty and developed other serious defects and nonconformities to warranty, including, but not limited to, HVAC [heating, ventilation, and air conditioning], electrical and SRS [supplemental restraint system] defects."  (*Id.* ¶ 9).  Plaintiff alleges that she "revokes acceptance of the sale contract."  (*Id.* ¶ 10).

Plaintiff's Complaint asserted three claims for relief against Ford: (1) breach of express warranty in violation of the Song-Beverly Consumer Warranty Act (the "Song-

Beverly Act"), Cal Civ. Code § 1790; (2) breach of implied warranty in violation of the Song-Beverly Act; and (3) violation of section 1793.2 of the Song-Beverly Act. (*Id.* ¶¶ 15–55). Plaintiff sought, among other things, "general, special, and actual damages"; "rescission of the purchase contract and restitution of all monies expended"; "[a] civil penalty in the amount of two times Plaintiff's actual damages"; and "reasonable attorney's fees and costs of suit." (*Id.* at Prayer for Relief).

Along with the Complaint, Plaintiff also attached the Retail Installment Sales Contract (the "Contract"). (*Id.*, Ex. 1). The Contract provides, in relevant part, the following:

```
Total Cash Price (A through T)                                            $_____ (1)
2. Amounts Paid to Public Officials
   A. Vehicle License Fees                                                $_____ (A)
   B. Registration/Transfer/Titling Fees                                  $_____ (B)
   C. California Tire Fees                                                $_____ (C)
   D. Other _____                               $_____ (D)
   Total Official Fees (A through D)                                      $_____ (2)
3. Amount Paid to Insurance Companies
   (Total premiums from Statement of Insurance column a + b)              $_____ (3)
4. ☐ State Emissions Certification Fee or ☐ State Emissions Exemption Fee $_____ (4)
5. Subtotal (1 through 4)                                                 $_____ (5)
```

(*Id.*).

On November 26, 2018, Plaintiff filed her First Amended Complaint ("FAC"). (Rosensweig Decl. ¶ 7, Ex. C). Plaintiff maintained the same underlying factual allegations and asserted, in addition to the previous three claims for relief, two more claims against Ford: (4) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; and (5) violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code. § 1770. (FAC ¶¶ 57–73). Plaintiff's FAC additionally sought injunctive relief and punitive damages. (*Id.* at Prayer for Relief).

Along with the FAC, Plaintiff again attached the Contract, which provides, in relevant part, the following:

[Image of contract excerpt showing Total Cash Price, Amounts Paid to Public Officials (Vehicle License Fees, Registration/Transfer/Titling Fees, California Tire Fees, Other), Total Official Fees, Amount Paid to Insurance Companies, State Emissions Certification Fee or State Emissions Exemption Fee, and Subtotal.]

(*Id.*, Ex. 1).

On January 7, 2019, Plaintiff filed the Second Amended Complaint ("SAC"), maintaining the same factual allegations, asserting the same five claims for relief, and seeking the same remedies. (NoR, Ex. A (Docket No. 1-1)). As before, Plaintiff attached the same Contract, as follows:

[Image of the same contract excerpt repeated.]

(*Id.*, Ex. 1).

On January 28, 2019, Ford offered to settle this action for $75,001, exclusive of interest and costs. (*Id.* ¶¶ 4, 17). The last day to respond to Ford's settlement offer was March 4, 2019, and to date, Plaintiff has not responded to or requested an

extension of time to respond to the offer.  (*Id.* ¶¶ 4, 18).  On March 8, 2018, Ford removed the action, invoking this Court's diversity jurisdiction.  (*Id.* ¶ 12).

## II. DISCUSSION

### A. Compliance with the Local Rules

As an initial matter, Ford contends that the Remand Motion should be denied because Plaintiff did not properly meet and confer prior to filing the Remand Motion, in violation of Local Rule 7-3.  (Remand Opp. at 9).  Ford explains that Plaintiff sent an email on March 25, 2019, and filed the Remand Motion on March 29, 2019, only four days later.  (*Id.* at 9 n.3).  Ford also notes that Plaintiff's conduct was in bad faith and Plaintiff "attempted to coerce Ford into stipulation to remand with a threat of Rule 11 sanctions."  (*Id.* at 9–10).

In response, Plaintiff notes that while the Remand Motion was filed only four days after she attempted to meet and confer, her attempt was in good faith and Ford has not suffered any prejudice.  (Remand Reply at 8–9).

The Court agrees with Plaintiff that Defendant does not appear to have suffered prejudice as a result of the failure to meet and confer.  The Court, therefore, will consider the merits of the Remand Motion.  *See Reed v. Sandstone Properties, L.P.*, No. 12-CV-5021-MMM (VBKx), 2013 WL 1344912, at *6 (C.D. Cal. Apr. 2, 2013) ("Because Reed suffered no real prejudice as a result of the late conference, however, the court elects to consider the motion on the merits.").

Plaintiff's counsel, however, is warned to scrupulously comply with the Local Rules going forward.

### B. Timeliness of Removal

A removing defendant bears the burden of establishing that removal is proper.  *See Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (per curiam) (noting the "longstanding, near-canonical rule that the burden on removal rests with the

removing defendant"). If there is any doubt regarding the existence of subject matter jurisdiction, the court must resolve those doubts in favor of remanding the action to state court. *See Gaus v. Miles,* Inc., 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

Under 28 U.S.C. § 1446(b)(1), a defendant must file a notice of removal "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based[.]" If the initial pleadings do not state a removable case, 28 U.S.C. § 1446(b)(3) additionally permits removal "within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." The statute "requires a defendant to apply a reasonable amount of intelligence in ascertaining removability," but "defendants need not make extrapolations or engage in guesswork." *Kuxhausen v. BMW Fin. Servs. N.A. LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) (citation omitted). Although the time limit is procedural rather than jurisdictional, it "is mandatory and a timely objection to a late petition will defeat removal . . . ." *Smith v. Mylan Inc.*, 761 F.3d 1042, 1045 (9th Cir. 2014) (quoting *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980)).

Here, Plaintiff argues that Ford had notice that the amount in controversy exceeded the $75,000.00 jurisdictional threshold from the original Complaint, FAC, and SAC. (Remand Mot. at 9). In Plaintiff's view, the Contract attached and incorporated into all three iterations of her Complaint stated that the total sale price for the vehicle was $35,911.68 and that she sought rescission of the purchase, civil penalties in the amount of two times her actual damages, and attorneys' fees. (*Id.*). According to Plaintiff, this information was "sufficient to trigger the 30-day period within which [Ford] could have removed this action." (*Id.*).

Ford disagrees, first noting that Plaintiff did not state any specific amounts of damages or "the purchase price in any of her complaints." (Remand Opp. at 6). Ford then argues that, while "Plaintiff points to the existence of the attached sales contract to

the complaints," the Contract itself is not legible and "the value of an illegible contract is the same as if it was never attached." (*Id.* at 6–7). Ford also argues that Plaintiff "did not provide any information in her complaints regarding damages and did not attach a legible contract by which Ford could ascertain an amount in controversy." (*Id.* at 7). Ford contends that it instead relied upon the settlement offer of $75,001 given to Plaintiff in order "to intelligently ascertain that [her] claim exceeds $75,000" for removal purposes. (*Id.* at 8).

The Court agrees with Ford to the extent that the Complaint, filed on August 21, 2018, was ambiguous on its face because the Contract was not legible. *See supra*. But this defect was then corrected in the FAC, filed on November 26, 2018, and in the SAC, filed on January 7, 2019. As indicated by the two images above, Ford could and should have ascertained that the total sale price for the vehicle was $35,911.68. *See Kuxhausen*, 707 F.3d at 1140 (recognizing while a defendant "need not make extrapolations or engage in guesswork," the removal statute "requires a defendant to apply a reasonable amount of intelligence in ascertaining removability") (citation omitted).

The deadline for Ford to file a notice of removal was therefore either December 26, 2018, or February 6, 2019. Ford's actual Notice of Removal was not filed until March 8, 2019, well after either date and is therefore untimely.

At the hearing, Ford contended that, in totality, the Contract was illegible. Ford noted that it could not decipher, among other things, Plaintiff's name, the VIN number, the subject vehicle, and other components of the Contract, rendering it in totality useless. The Court disagrees because Ford overlooks the fact that, in all three iterations of the Complaint, Plaintiff alleges that she "purchased a new 2015 Ford Mustang, VIN: 1FA6P8CF1F5413616." (*See* Compl. ¶ 8; FAC ¶ 8; SAC ¶ 8). Moreover, Ford's contention appears to be inconsistent with its conduct, such as making a settlement offer to Plaintiff for $75,001 (a figure Ford presumably did not make up and arrived at after a reasonable amount of assessment of the action). Finally, as pointed out by Plaintiff at the hearing, multiple copies of the Contract were created by Ford, at least one of which is in Ford's possession. As indicated above, Ford is

required and failed to apply a reasonable amount of efforts in ascertaining removability.

Accordingly, the Remand Motion is **GRANTED**.

### C.      Attorneys' Fees and Costs

Plaintiff also requests an award of attorneys' fees and expenses totaling $1,300.00 incurred in connection with Ford's removal. (Remand Mot. at 11). Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Court may award attorneys' fees where "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Whether or not to award fees and costs under § 1447(c) is within the Court's discretion. *See* 28 U.S.C. § 1447(c) ("order remanding the case ***may*** require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal") (emphasis added); *Dall v. Albertson's Inc.*, 349 F. App'x 158, 159 (9th Cir. 2009) ("Following remand of a case upon unsuccessful removal, the district court may, in its discretion, award attorney's fees . . . .").

Given that Ford's removal in this action was at least colorable, Plaintiff's request for attorneys' fees and costs is **DENIED**.

### III.    CONCLUSION

The Remand Motion is **GRANTED.** The Anti-SLAPP Motion and Dismissal Motion are **DENIED** *as moot*. The Court **REMANDS** this action to the Los Angeles County Superior Court.

IT IS SO ORDERED.